No. 3683

Second Circuit

WALKER v. McMURRAY

(December 31, 1929. Opinion and Decree.)

T. S. Price, deceased, and J. W. Elder (successor), of Ruston, attorneys for plaintiff, appellant.

Dhu Thompson, of Ruston, attorney for defendant, appellee.

ODOM, J. Plaintiff and defendant, two colored men, conceived the idea of establishing a ball park on the outskirts of Ruston, and to that end bought 4½ acres of land from T. E. Covington at an agreed price of $486, $100 to be paid in cash, and the balance to be paid in 6, 12, 18 and 24 months. The property was bought by the parties jointly, and for the deferred payments they gave their notes in solido, made payable to the vendor, T. E. Covington.

As stated, the property was purchased for the purpose of establishing a ball park,

in which it appears that the parties were to be equally interested. As the property had no improvements upon it at the time, it was agreed that they should build a grandstand and place a board fence around the park. If there was ever any agreement between the parties as to how the ball park was to be managed, the record fails to disclose it. The record shows, however, that some time subsequent to the purchase of the land, plaintiff and defendant reached an agreement by which plaintiff was to advance the money to take care of the notes as they matured, and defendant was to develop the park by clearing and leveling it, and by building a grandstand, a fence, and a ′ gate, and that, when these improvements were made and the notes given for the purchase price were paid, the parties would get together and make a settlement between themselves and agree upon the amount advanced by each for the development of the ball park.

The testimony shows that plaintiff carried out his part of the agreement by paying the purchase price of the land, except possibly· one note, and that defendant bought and paid for, out of his separate funds, lumber and other material for the building of the grandstand and fence, and paid for having the land cleared and leveled. The testimony shows that subsequent to the building of the grandstand and fence, there were a few ball games and prize fights staged—some by plaintiff and some by defendant—but just what amount was received by each is not stated, and in fact, so far as the present suit is concerned, the question of revenues from that source is not an issue.

The notes given for the land were turned over to Covington, the vendor, who placed them at the First National Bank of Rus-

ton, where they were paid by the plaintiff, Calvin Walker. Walker brings the present suit against defendant to recover of him the sum of $243, or one-half the purchase price of the property, alleging that he had advanced for the defendant, not only all of the cash payment, but one-half the amount of the notes as well. The defendant in answer denied that plaintiff had paid for him one-half the $100 cash payment on the land and one-half the first note due, as alleged, but, on the contrary, set up that he had contributed his one-half of the cash payment, as well as one-half of the first note due, but admitted that plaintiff had paid the entire amount of the second, third and fourth notes. Defendant reconvened for the sum of $512.98 which he had advanced for the improvement of the park.

At the inception of the trial, plaintiff objected to any testimony offered by defendant tending to establish his claim for money advanced and labor performed in improving the ball park, for the reason that his claim was represented by promissory notes and that the items set up by defendant could not be pleaded as a set-off, because said items were not equally liquidated and demandable (see article 2209, Civil Code). The objection was overruled, and we think properly so, because plaintiff's suit is not one on a promissory note, but to recover money advanced for the payment of said notes. Plaintiff claims to be the holder and owner of the notes, but, as a matter of fact, the notes themselves and the indorsements thereon show the contrary. The notes are in solido obligations of plaintiff and defendant. They were placed in the bank, either as collateral or for collection, and when due they were paid to the bank, as shown by the indorsements thereon, and while, as stated,

plaintiff claims to own the notes, yet as a matter of fact the notes themselves show that they were paid and that the transfer which Covington made of the notes to the plaintiff, Walker, was made long after the notes had been fully paid. This, as stated, is shown by the indorsements on the notes.

On the first note due, Mr. Add Thompson, vice president of the bank and who handled the transaction, wrote on the back of it the word "Paid," followed by the words, "and transferred to Calvin Walker, 10—11—26, without recourse on us, (signed) First National Bank, by Add Thompson, V. P." This indorsement was subsequently obliterated in part by the erasure of the words "First National Bank, by Add Thompson, V. P.," and the name "T. E. Covington" was signed to the transfer. On the back of the second note due, there was marked originally the words: "Paid by Calvin Walker, 4—12—27, (signed) First National Bank by Add Thompson, V. P." Subsequently, that indorsement was changed entirely so as to read as follows: "Paid and transferred to Calvin Walker, 4—12—27, without recourse on me." The fourth note due bears upon the back of it this indorsement: "Payment received and cancellation authorized. First National Bank of Ruston, Ruston, Louisiana." That indorsement was erased entirely and the following substituted: "Paid and transferred to Calvin Walker, 4—9—28, without recourse on me. (Signed) T. E. Covington."

The fact that the original indorsement on each of these notes was completely changed is patent. The testimony shows beyond question that each and every one of these notes was paid and left with the bank, and that after the last one was paid, the cashier of the bank, without the consent of Romie McMurray, wrote the transfer to Walker and that Covington signed the transfer. The plaintiff, therefore, has no action on the promissory notes themselves, because when they finally went into his hands they had long since been paid and the so-called "transfer" of them to him amounted to nothing.

It is not disputed that plaintiff has an action against the defendant to recover the amount which he paid for defendant; therefore, the defendant had a right to plead any claim which he may have had for improvements placed upon the property as a set-off against the amount advanced for the payments of the purchase price of the property.

It is suggested that there was a partnership between these parties and that neither one could have his claim against the other liquidated prior to a liquidation of the partnership. But there was no partnership between these parties, merely a joint ownership of certain real estate, and this is a suit by which the parties are trying to enforce their respective claims against each other, and we think the court correctly permitted testimony on both sides for that purpose. If there had been a commercial partnership between them and there had been debts arising out of partnership transactions, the partnership affairs would have had to be liquidated before the partners could adjust their claims against each other, but, as stated, there was no commercial partnership— in fact no partnership at all—and no good

reason can be assigned why these parties should not in a suit of this kind have their claims against each other adjudicated.

On the merits of the case, the district judge in a written opinion made an exhaustive analysis of the testimony and reached the conclusion that, in connection with the purchase of the property and improving the same, plaintiff had advanced the sum of $456.50, and that defendant had advanced for the improvement of the property the sum of $466.98, and he granted judgment accordingly. We have gone over the testimony carefully and it does not appear to us that the judge erred in his findings, and in respect to the amounts we shall let the judgment stand.

The judgment goes further, however, and orders the property owned by these parties sold to effect a partition. As neither party asked that this be done, and as each seemed to object to it, and as we see no reason why it should be done, we shall amend the judgment by eliminating all reference to a sale and partition of the real estate. The property is owned by these parties jointly, and we think they should be left to dispose of it as they see fit. The judgments practically offset each other.

For the reasons assigned, it is ordered, and decreed that the judgment appealed from be amended by striking therefrom that portion which orders the property sold to effect a partition, and as thus amended, it is affirmed; the costs to be borne in equal proportion by these litigants.